UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 3:18-cr-00081-MMD-WGC |
| Plaintiff, | ORDER |
| v. | |
| GUILLERMO ZUNIGA-VARGAS, | |
| Defendant. | |

## I.    SUMMARY

Defendant Guillermo Zuniga-Vargas seeks dismissal of the indictment for unlawful reentry under 8 U.S.C. § 1326(a) despite his three prior removals from the United States ("Motion")[1]. (ECF No. 48 (second motion to dismiss).) Defendant argues: (1) the first and third removals are invalid under *Pereira v. Sessions*, 138 S. Ct. 2105 (2018)—asking the Court to disregard the Ninth Circuit's decision in *Karingithi v. Whitaker*, 919 F.3d 1158 (9th Cir. 2019); (2) the first and third removals are invalid for the separate reason that the immigration judge failed to advise him of his eligibility for voluntary departure; and (3) the second removal was invalid because the immigration officer did not inform him that he could withdraw his application for admission and his fundamental due process rights were

///

---

[1]Because the government refers to its response to the first motion to dismiss, the Court has reviewed the briefs relating to Defendant's first motion to dismiss (ECF Nos. 25, 28, 31, 33); Defendant's motion for reconsideration and motion for leave to supplement (ECF Nos. 36, 37, 38, 41, 45); the government's response to the motion for leave to supplement and attached exhibits (ECF Nos. 41, 41-1, 41-2, 41-3, 41-4); the government's errata (ECF No. 42); the government's response  to the Motion (ECF No. 54) and Defendant's reply (ECF No. 55).

violated. Defendant therefore contends his three prior removals cannot be predicate removals for the present indictment and thus the unlawful reentry charge should be dismissed. The Court will deny the Motion because Defendant has not successfully collaterally attacked the prior removals.

## II.    BACKGROUND

Defendant's charge for unlawful reentry under 8 U.S.C. § 1326(a) is based on Defendant's prior removals from the United States in January, April, and September 2014. (ECF Nos. 10.) Defendant's first removal was pursuant to an order of removal issued by an immigration judge ("IJ"). (ECF No. 48-1.) His third removal in September 2014 was based on the reinstatement of the first removal order issued in January 2014. (ECF No. 48-2.) The second removal in April 2014 resulted from an expedited removal order issued by an immigration officer. (ECF Nos. 48-3, 48-6.)

The Motion is Defendant's second attempt to dismiss his indictment. (*See* ECF No. 25 (Defendant's first motion to dismiss); ECF No. 35 (the Court's ruling regarding the first motion); ECF No. 47 (the Court's order rescinding its first order per Defendant's motion).) The government responded to the Motion and incorporated its response to the first motion (*see* ECF No. 54; ECF No. 28). The government's prior response is herein referred to as Incorporated Response.

The Court heard arguments on the Motion at a hearing on April 23, 2019 ("Hearing").

## III.   LEGAL STANDARD

To obtain a conviction for unlawful reentry pursuant to 8 U.S.C. § 1326(a), the government must establish that the defendant was previously, validly removed from the United States before the alleged reentry. *See United States v. Cisneros-Rodriguez*, 813 F.3d 748, 755 (9th Cir. 2015). A defendant charged with unlawful reentry under § 1326(a) "has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction." *United States v. Ubaldo-Figueroa*, 364 F.3d 1042, 1047 (9th Cir. 2004). A defendant may successfully challenge a predicate

removal order by showing: (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings where the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the removal order is fundamentally unfair. *See* 8 U.S.C. § 1326(d); *see also Ubaldo-Figueroa*, 364 F.3d at 1047 (noting that "the Due Process Clause of the Fifth Amendment requires a meaningful opportunity for judicial review of the underlying deportation" in a § 1326 prosecution). The entry of a removal order is fundamentally unfair if the deportation proceedings violated the defendant's due process rights and that violation prejudices the defendant. *United States v. Ortiz-Lopez*, 385 F.3d 1202, 1204 (9th Cir. 2004).[2]

## IV. DISCUSSION

### A. Defendant's First and Third Removals

Defendant's collateral challenge to his first and third removals is unsuccessful under *Karingithi* and because Defendant fails to establish that his first removal was invalid. The Court therefore finds that both removals are proper predicates for the instant indictment.

### 1. Entitlement to Relief Under *Pereira* in light of *Karingithi*

Defendant argues his first and third removals are invalid because the immigration court lacked jurisdiction over his first removal proceedings and his third removal merely reinstated the former removal order. (ECF No. 48 at 7, 10.) Grounding his argument in *Pereira*, Defendant contends the immigration court was without jurisdiction because the notice of appearance ("NTA") upon which the immigration court's jurisdiction for Defendant's first removal proceedings was premised did not specify the date and time for

///

_____

[2]The government acknowledges that this circuit's law excuses Defendant from satisfying the exhaustion and deprivation requirements under § 1326(d)(1) and (2) if Defendant can show that the entry of the deportation order was fundamentally unfair under § 1326(d)(3). (ECF No. 28 at 11 (citing *United States v. Ochoa*, 861 F.3d 1010, 1020 (9th Cir. 2017) and *United States v. Aguilera-Rios*, 769 F.3d 626 (9th Cir. 2014)).) However, the government reserves the right to argue on appeal that Defendant fails to establish these requirements. (*Id.*)

Defendant's appearance. (*Id.* at 7; ECF No. 48-4.)[3] Specifically, the NTA here only provided that the removal hearing would occur "on a date to be set at a time to be set." (ECF No. 48-4 at 2.)

In *Karingithi*, a Ninth Circuit panel rejected the same argument Defendant makes here. There a panel of the Ninth Circuit found, contrary to Defendant's position, that *Pereira* does not concern the immigration court's jurisdiction and was narrowly concerned with the content of a notice to appear within the context of the stop-time rule and the requirement for continuous physical presence for cancellation of removal under 8 U.S.C. §§ 1229(a), 1229b. *Karingithi*, 913 F.3d at 1160–61 (citing *Pereira*, 138 S. Ct. at 2110, 2117). The court found that the immigration court's jurisdiction does not hinge on § 1229(a)—unlike the stop-time rule in *Pereira*, but instead on regulations promulgated by the Attorney General. *Id.* at 1160. Based on those regulations, including 8 C.F.R. §§ 1003.13, 1003.14(a) 1003.15(b) and 1003.18(b), the court found that a notice to appear not specifying the time and place of an alien's initial removal hearing vests the immigration court with jurisdiction over the removal proceedings "so long as a notice of hearing specifying this information is later sent to the alien." *Id.* at 1161 (quoting and relying on *In re Bermudez-Cota*, 277 I. & N. Dec. 441, 447 (BIA 2018)). This Court is bound by *Karingithi*'s holding. *See, e.g.*, *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003)

Based on *Karingithi*, it is undisputable that the immigration court had jurisdiction over Defendant's removal proceedings. While Defendant's initial NTA did not include date and time, the hearing notice Defendant subsequently received specified the time and date of his removal proceedings (ECF No. 28-3). Accordingly, the Court rejects Defendant's argument that his first and third removals were invalid for lack of jurisdiction.

///

///

///

---

[3] *See* 8 CFR § 1003.14 ("Jurisdiction vest, and proceedings before an Immigration Judge commence, when a charging document is filed with the Immigration Court by the Service."); *see also id.* at § 1003.13 (defining a "charging document" as including "a Notice to Appear").

4

## 2.    Voluntary Departure

Defendant's voluntary departure arguments are also unavailing.

There are two types of voluntary departure—pre and post-decisional voluntary departure. *See, e.g.*, *In re Arguelles-Campos*, 22 I. & N. Dec. 811, 813–14 (BIA 1999); 8 U.S.C. § 1229c(a), (b)).

8 U.S.C. § 1229c(a) provides for pre-decisional voluntary departure. Under § 1229c(a), the Attorney General may permit an alien to voluntarily depart the country "in lieu of being subject to [removal] proceedings under section 1229a . . . or prior to the completion of such proceedings, if the alien is not deportable under section 1227(a)(2)(A)(iii)[--concerning aggravated felonies--] or section 1227(a)(4)(B)[--concerning terrorist activities--] . . .." 8 U.S.C. § 1229c(a). However, a defendant's eligibility for pre-decisional voluntary departure is clarified in 8 C.F.R. § 1240.26(b). Under § 1240.26, if an alien had not previously been granted voluntary departure, he may be afforded such relief under 8 C.F.R. § 1240.26(b). *See* 8 C.F.R. § 1240.26(a), (b). Section 1240.26(b) in turn provides that prior to the completion of removal proceedings an IJ may grant voluntary departure to an alien pursuant to section 240B(a) of the Act "*only if the alien*":

> (A) Makes such request prior to or at the master calendar hearing at which the case is initially calendared for a merits hearing;
>
> (B) Makes no additional requests for relief (or if such requests have been made, such requests are withdrawn prior to any grant of voluntary departure pursuant to this section);
>
> (C) Concedes removability;
>
> (D) Waives appeal of all issues; and
>
> (E) Has not been convicted of a crime described in section 101(a)(43) of the Act and is not deportable under section 237(a)(4).

8 C.F.R. § 1240.26(b)(1)(i)(A)–(E). Thus, under § 1240.26(b) it appears an IJ's discretion to grant voluntary departure is triggered by a defendant seeking that relief in the first instance. *See also In re Arguelles-Campos*, 22 I. & N. Dec. at 817 ("An alien must request

///

section 240B(a) relief either in lieu of being subject to proceedings, or early in removal proceedings.").

8 U.S.C. § 1229c(b) provides for the post-decisional form of voluntary departure which is available to non-citizens at the conclusion of removal proceedings. 8 U.S.C. § 1229c(b)(1). Under § 1229c(b)(1)(B), the Attorney General *may* allow voluntary departure *if*, among other things, "the [IJ] enters an order granting voluntary departure in lieu of removal *and* finds that . . . the alien is, and has been, a person of good moral character for at least 5 years immediately preceding the alien's application for voluntary departure." (Emphasis added.) *See also* 8 C.F.R. § 1240.26(c) (explaining the findings an IJ must make before exercising discretion to grant voluntary departure at the conclusion of removal proceedings—including the same good moral character requirement in 8 U.S.C. § 1229c(b)(1)(B)).

Here, Defendant initially contends that his first and third removals were defective because (1) he was eligible for pre and post-decisional[4] voluntary departure and the immigration court failed to advise him of such eligibility and (2) he suffered prejudice. (ECF No. 48 at 25–31.) Defendant initially grounded his argument on the IJ's failure to inform him of his eligibility for voluntary departure based on information in his alien file. (*Id.* at 28.) However, upon reviewing Exhibit 9—a recording of Defendant's pertinent immigration proceedings—which the government attached to its Incorporated Response (ECF No. 28 at 2, 4, 10 (citing the exhibit); ECF No. 29-1 (docketing the government's Exhibit 9/manual audio filing, ID#205-412-393, 2013-12-24 08:59:03 AM)), Defendant tweaked his argument.

First, Defendant filed a surreply[5] in which he appeared to admit that he was advised of his eligibility for voluntary departure, and instead argued that the manner in which he was advised was inadequate and amounted to an abuse of discretion. (ECF No. 60-1 at ///

---

[4]Defendant uses the terms pre and post "conclusion" voluntary departure. (*See, e.g.*, ECF No. 48 at 2.)

[5]The surreply was initially presented as a notice. (ECF No. 58.)

2–3; ECF No. 29-1 at 00:09:50–00:11:06).) Defendant appeared to argue that the IJ's "presumptive decision-making was an abuse of discretion"—because it amounts to a failure to exercise discretion. (ECF No. 60-1 at 3 & n.6.) However, at the Hearing on the Motion, Defendant refined his abuse of discretion argument. At the Hearing, Defendant contended that the IJ's alleged abuse of discretion is merely a way to short-change the analysis as to whether Defendant was plausibly entitled to the relief of voluntary departure. Defendant argued that he does not concede his argument that he was not informed of his eligibility for voluntary departure—even in light of Exhibit 9—because the manner in which the IJ informed him of his eligibility amounts to procedural error. (*See also* ECF No. 60-1 at 3.) Defendant refers back to his arguments in the Motion (*id.* at n.4)—that he was eligible for pre-decisional voluntary departure relief because he had no aggravated felony convictions, nor were there terrorisms grounds to deport him (ECF No. 48 at 25–31). He contends he was eligible for post-decisional voluntary departure because he satisfies the presence and good moral character requirements. (*Id.*).

In response, the government refers to its Incorporated Response (ECF No. 54 at 1-2, 4) where it merely argued that Defendant had no right to voluntary departure because hat relief is a matter resting in the discretion of the IJ and the Attorney General (ECF No. 28 at 8–10). Further, pointing to Exhibit 9, the government contends that Defendant was nonetheless afforded the opportunity to ask for voluntary departure. (*Id.* at 9.) The government otherwise fails to address Defendant's arguments as to whether voluntary departure relief was plausible. Maneuvering through the disjointed and insufficient briefing in this case, the Court concludes that the IJ arguably committed a procedural due process violation, but Defendant fails to establish that relief was plausible.

### a.   Violation of Due Process

An IJ has a duty to inform an alien of his ability to apply for relief from removal. *U.S. v. Vidal-Mendoza*, 705 F.3d 1012, 1017–19 (9th Cir. 2013) (explaining the IJ's duty to inform of eligibility for relief). "Merely asking whether an alien wants to apply for certain relief is not sufficient." *United States v. Rivera*, 702 F. App'x 547, 549 (9th Cir. 2017).

Rather, an IJ "must adequately explain the hearing procedures to the alien, including what he must prove to establish his basis for relief." *Agyeman v. I.N.S.*, 296 F.3d 871, 877 (9th Cir. 2002). The IJ must specifically advise the alien of what relief he is eligible for, where the record contains an inference of eligibility, and give him the opportunity to develop the issue, including providing an opportunity to apply for relief and to provide evidence in support. *See United States v. Melendez–Castro*, 671 F.3d 950, 954 (9th Cir. 2012).

The Court concludes that while Exhibit 9 reveals the IJ may have technically informed Defendant of his eligibility for pre-decisional voluntary departure relief, the IJ did not properly apprise Defendant nor give him the opportunity to develop the issue and properly ascertain whether to apply for relief. The audio recording constituting Exhibit 9 establishes that Defendant was informed that he was eligible for voluntary departure before the IJ ordered his removal. (ECF No. 29-1 at 00:09:50–00:11:06.) The IJ informed Defendant that based on his record—particularly of no aggravated felonies—it was possible for him to be granted voluntary departure upon request. (*Id.* at 00:10:12-00:11:06.) The IJ summarily noted however that if Defendant made the request he was inclined to deny the request in exercising his discretion because of Defendant's "criminal history" and because Defendant was therefore not "suitable" to be "treated generously" under the immigration laws. (*Id.* at 00:11:06–00:11:48.) The IJ had earlier found that Defendant was "removable" for *inter alia*, having been convicted of a crime of moral turpitude—intentionally "obtaining and or using the personal identification information of another to avoid or delay prosecution," which was "so fundamentally wrong that it is not only a criminal act, it's also an immoral act." (*Id.* at 00:04:55–00:06:56; *see also* ECF No. 28-4 at 4.) The Court concludes that the IJ's manner of informing Defendant of his eligible in tandem with denying the relief as a matter of discretion amounts to depriving Defendant of an opportunity to respond in violation of Defendant's due process rights. *See, e.g.*, *United States v. Raya-Vaca*, 771 F.3d 1195, 1204 (9th Cir. 2014) ("Due process always requires, at minimum, notice and an opportunity to respond.").

///

### b. Prejudice/Plausibility of Relief

Nonetheless, the Court concludes that based on applicable authority Defendant fails to demonstrate that it was plausible that the IJ could (or would) have exercised discretion to grant the voluntary departure in his favor.[6]

An IJ has broader authority to grant pre-decisional voluntary relief on discretion under § 1229c(a) than post-decisional relief under § 1229c(b). *In re Arguelles-Campos*, 22 I. & N. Dec. at 817. Additionally, while it is unclear whether plausibility is defined by could or would under Ninth Circuit caselaw, it appears the distinction is largely without meaning here.

In satisfying his burden to prove plausibility of relief, a defendant "cannot succeed by merely showing a theoretical possibility of relief, but need not prove that relief was probable." *Raya-Vaca*, 771 F.3d at 1207 (internal citations, quotations and alteration omitted). This means that the defendant "need not show that he *definitely* would have received immigration relief[, but must] establish some evidentiary basis on which relief could have been granted." *Id.* (internal quotations and citations omitted) (emphasis added). "[T]he alien must make a plausible showing that the facts presented would cause the Attorney General to exercise discretion in his favor." *U.S. v. Barajas-Alvarado*, 655 F.3d 1077, 1089 (9th Cir. 2011). Additionally,

> [e]very case involving the prejudice prong of § 1326(d)(3) proceeds in much the same way: the defendant cites cases from the courts and the BIA where an alien with similar equities was granted the discretionary relief at issue, and the government distinguishes those cases, cites cases to the contrary, or argues that the cases relied on by the defendant are outliers. [The Ninth Circuit has ] always (1) placed the burden on the defendant to show that he was prejudiced by the due process violation, (2) evaluated the authorities cited by the defendant, (3) compared them to the authorities offered by the government, and (4) determined whether the defendant has carried his burden to prove that he suffered prejudice.

///

---

[6] *In Raya-Vaca*, the circuit court provided that plausibility required the alien to establish that he "could have" been granted relief in form of withdrawal at time of his expedited removal proceedings. 771 F.3d at 1207, 1209. However, in *U.S. v. Valdez-Novoa*, 780 F.3d 906 (9th Cir. 2015), the court reiterated that "the defendant must show that it was plausible that he *would have* received some form of relief from removal." *Id.* at 916 (internal quotations and citation omitted) (emphasis added).

*U.S. v. Valdez-Novoa*, 780 F.3d 906, 916 (9th Cir. 2015).

Here, the Court is deprived of the benefit of comparative authority by the government because beyond the suggestion that relief was not plausible, the government provides no argument on the issue, much less authority in support of its position—neither in briefing nor at the Hearing.[7] Nonetheless, the Court observes that "the crucial point is that" Defendant "must make the initial showing that he was prejudiced [under § 1326(d)(3)] by the alleged due process violation." *Id.*

In voluntary departure cases, courts in this circuit follow a two-step process to determine whether a defendant was prejudiced by an IJ's decision. *Id.* at 917. First, a court identifies "the factors relevant to the IJ's exercise of the discretion for the relief being sought." *Id.* (citations and quotation omitted). Second, the court determines whether "in light of the factors relevant to the form of relief being sought, and based on the unique circumstances of the alien's own case, it was plausible (not merely conceivable) that the IJ would have exercised discretion in the alien's favor." *Id.* (citations and quotation omitted). An alien's "negative and positive equities" are the factors relevant to the IJ's determination of whether to grant voluntary departure. *Id.* (citations omitted). The non-exhaustive list of negative equities includes: (1) "the nature and underlying circumstances of the deportation ground at issue[;]" (2) other violations of immigration laws; (3) "the existence, seriousness, and recency of any criminal record; and [(4)] other evidence of bad character or the undesirability of the applicant as a permanent resident." *Id.* (quotations and citation omitted). The positive equities include "compensating elements such as long residence . . ., close family ties in the United States, or humanitarian needs." *Id.* (quotations and citation omitted).

///

///

///

---

[7]The lack of argument is contextualized by the fact that the notice of the Hearing directed the parties to be prepared to address two of Defendant's arguments relating to voluntary departure and withdrawal of application for admission (ECF No. 57).

Defendant cites several BIA decisions and Ninth Circuit caselaw[8] in support of his position that it was plausible that an IJ would have granted him voluntary departure. (ECF No. 48 at 29–31.) Aside from pinpointing his age of "around 40 years old,"[9] Defendant suggests that his criminal history was relatively minor. According to Defendant his "prior criminal history consisted largely in moving violations and minimal drug and alcohol offenses; [and] his felonies were non-violent" (*id.* at 31). (*Cf.* ECF No. 49 (Defendant's sealed PSR which was available to the IJ).) Defendant also contends that it "appears . . . he had no prior removals before [the first removal at issue here]" (ECF No. 48 at 31). (*But see id.* at 6 ("The defendant stated that he was allowed voluntary removal in 1997, but I.C.E. did not have a record of the defendant at all.").) Defendant otherwise posits that his positive equities would have tip the plausibility scale in his favor. He notes that at the time of the first removal hearing he had four U.S. Citizen-children, had lived more than half his life in the country, and his long-time partner was also a U.S. citizen. (ECF No. 48 at 31.) The Court finds Defendant fails to establish relief was more than conceivable. Accordingly, Defendant's arguments do not mount a successful collateral challenge to his first removal and related third removal.

First, the caselaw Defendant cites does not suggests that relief was plausible here because either Defendant falls outside the factual bounds of the cases or the Ninth Circuit has indicated the caselaw is unpersuasive in this context. Defendant particularly relies on the following BIA cases: *In re Gamboa*, 14 I. & N. Dec. 244 (BIA 1972); *In re Hernandez–Barreto*, A92297631, 2004 WL 2943517 (BIA Oct. 29, 2004); *In re Reyes–Jimenez*, A97341646, 2004 WL 2418597 (BIA Oct. 4, 2004); *In re Guillermo Ramirez*, A90797718, 2005 WL 698425 (BIA Mar. 8, 2005); *In re Gonzales–Figeroa*, A29013696, 2006 WL 729784 (BIA Feb. 10, 2006); *In re Pineda–Castellanos*, A77212443, 2005 WL 3833024 ///

---

[8]To the extent Defendant relies on data establishing the number of aliens granted voluntary departure during the period of 1927 and 2005 to support plausibility here (ECF No. 48 at 29), the Court finds the data irrelevant to Defendant's 2014 removal.

[9]*Raya-Vaca*, 771 F.3d at 1208 (explaining age does not affect plausibility).

(BIA Nov. 16, 2005); *In re Villalonga Mante*, A44809425, 2007 WL 1676929 (BIA May 18, 2007); and *In re Pina-Galindo*, 26 I. & N. Dec. 423 (BIA Sept. 23, 2014). Defendant also relies on a single unpublished Ninth Circuit decision— *United States v. Alcazar-Bustos*, 382 F. App'x 568 (9th Cir. 2010).

In *Valdez*, the Ninth Circuit stated it was "unmoved by cases where the Board merely agreed to remand to the IJ to consider" whether to grant voluntary departure to an alien with fewer negative equities because "such remands tells us little about the Board's standards or practices." 780 F.3d at 919. The circuit court pinpointed two of the cases Defendant cites here—*In re Villalonga Mante* and *In re Reyes–Jimenez. Id.* The fact of the defendants in those cases having fewer negative equities holds true relative to Defendant here. In *In re Villalonga Mante*, it appears the defendant had a single conviction of sexual battery and was sentenced to "a relatively brief period of felony probation." 2007 WL 1676929, at **1–2. In *In re Reyes–Jimenez*, while the defendant had three convictions— for DUI, second-degree burglary, and disorderly conduct, it appears only the burglary conviction was a felony—and not an aggravate felony. 2004 WL 2418597, at * 2. Further, the defendant's sentences for each was comparatively short—10 days for disorderly conduct, 31 days for the second-degree burglary, and one year for driving under the influence. *Id.* And, Reyes-Jimenez's most recent conviction was six years before his removal proceedings. Here, Defendant's PSR and records document alcohol offenses, multiple controlled substance offenses, and his two most recent convictions being felonies with lengthy sentences. (ECF No. 49 at 4-6; ECF Nos. 28-2, 28-8.) Additionally, Defendant's conviction immediately preceding his removal proceedings came only several months prior. (ECF No. 28-2 (reflecting June 2013).)

In *Valdez*, the circuit court also explained that it was "equally unpersuaded by cases where the Board has remanded to the IJ to consider whether to grant voluntary departure to lawful permanent residents with criminal histories. 780 F.3d at 920. The court particularly reference two of the cases Defendant cites— *In re Guillermo Ramirez* and *In re Hernandez–Barreto*. Thus, the Court does not rely on these cases here.

Defendant cites three cases where the BIA affirmed an IJ's grant of voluntary relief that are meaningfully factually distinguishable from Defendant's case. *In re Gamboa* is factually distinct because the grant of voluntary departure there chiefly depended on the appealing defendant's case being joined with his pregnant wife's case and the pregnancy appeared to be an overriding factor in granting departure. *See* 14 I. & N. Dec. at 245. The defendant in *In re Gonzales–Figeroa* was differently situated than Defendant. Gonzales-Figeroa's mother had, at the time of his removal proceedings, already filed a visa petition on his behalf and Gonzales-Figeroa had made efforts to reform behavior that had contributed to his convictions. *See In re Gonzales–Figeroa,* 2006 WL 729784, at **1–2. In *In re Pineda–Castellanos* the defendant had convictions for illegal rentry, battery, drunkenness, threatening, a second battery, and driving under the influence. 2005 WL 3833024, at *1. The decision does not make clear which of Pineda-Castellanos' convictions were felonies. Further, the IJ's grant of voluntary departure was not directly at issue—the defendant had appealed his denial of a continuation to apply for adjustment of status via a pending visa. *Id.* Tellingly, the BIA noted "[g]iven the respondent's criminal record, a grant of voluntary departure by the [IJ] was *more than generous.*" *Id.* at *2. The BIA appeared to affirm the IJ's grant of voluntary departure because it generally gives deference to an IJ's exercise of his or her discretion. *Id.* at * 1. The BIA explained that its "adoption and affirmances" of an IJ's decision, "in whole or in part, is 'simply a statement that the Board's conclusions upon review of the record coincide with those which the [IJ] articulated in his or her decision.'" *Id.* Arguably then, this Court should not ignore that the IJ expressly exercised discretion here to deny Defendant voluntary departure based on his criminal history.

Defendant's reliance on *In re Pina-Galindo* is also questionable. Defendant relies on the fact that in *In re Pina-Galindo* the BIA "reinstated" the IJ's voluntary departure. 26 I. & N. Dec. at 426. However, the reliance on that fact is misleading because the only issue on appeal was the IJ's finding regarding the defendant's cancellation of removal and the BIA dismissed that issue on appeal. *Id.* at 423, 426. There was no discussion of the IJ's

voluntary departure ruling and it appears the ruling was only reinstated as a matter of course—because the appeal was dismissed.

Finally, the facts of *Alcazar-Bustos* make that case an inappropriate comparison to Defendant's case. There, the circuit court balanced Alcazar-Bustos'positive equites—that he had resided in the U.S. since he was two months, *married* to a U.S. citizen and had a child who was also a citizen. *Alcazar-Bustos*, 382 F. App'x at 569. But, apparently paramount was that the Ninth Circuit disagreed with the district court that Alcazar-Bustos' criminal history was 'significant and lengthy.' *Id.* As the circuit court saw it, Alcazar-Bustos' criminal history prior to his illegal reentry charge dated back to his teenage years. *Id.* The same cannot be said here.

Based on these comparisons with Defendant's case and his cited caselaw, the Court concludes that considering Defendant's stated positive equities his negative equities—particularly his criminal history and recency of his last conviction—makes it less than plausible that an IJ would have exercised discretion in his favor at the time of his first removal proceedings. *See also Valdez*, 780 F.3d at 920 ("[T]he existence of a single case that is arguably on point means only that it is 'possible' or 'conceivable' that a similarly situated alien would be afforded voluntary departure . . . [and] is plainly insufficient to warrant a finding that the defendant was prejudiced.").

The Court's conclusion is further supported by the IJ's expressed finding that Defendant was of bad moral/"unsuitable" character based on his conviction for obtaining and/or using the personal identification information of another to avoid or delay prosecution, "a felony, in violation of Nevada Revised Statutes 205.463(2)." (ECF No. 28-4 at 4; ECF No. 29-1 at 00:04:55–00:06:56; ECF No. 28-8.) At the Hearing, without authoritative support Defendant argued that the offense does not amount to a crime of moral turpitude because it is too intertwined with Defendant's immigration violation. However, Defendant notes no immigration violation for point of reference to aid the Court in undertaking any analysis as to whether the conviction was intertwined with an immigration violation. The offense stems from 2004 while the first removal proceeding took

14

place in 2014. Further the statute of conviction—NRS § 205.463(2)—does not narrow the possible unlawful conduct undergirding the delay of prosecution component of Defendant's conviction. The statute only indicates the avoidance of prosecution related to another "unlawful act[,]" *id.* at § 205.463(2)(b), and Defendant does not otherwise argue that the offense is not a match for the generic offense of moral turpitude under federal law.[10]

Moreover, the applicable statute defining "good moral character"—8 U.S.C. § 1101(f)—includes a catch-all phrase that appears to require only that there is a finding of other reasons why the alien is not of good moral character. 8 U.S.C. § 1101(f) ("The fact that any person is not within any of the foregoing [enumerated] classes [—§ 1101(f)(1)–(9) —] shall not preclude a finding that for other reasons such person is or was not of good moral character."). The IJ's finding here clearly falls within the catch-all language.

The Court also cannot agree that Defendant was eligible for post-decisional voluntary departure—so as to require the IJ to advise him of such eligibility. The IJ's finding that Defendant was "unsuitable" for relief under the immigration laws because of his criminal history—including an "immoral" crime—effectively rendered Defendant ineligible for post-decisional voluntary departure per 8 U.S.C. § 1229c(b)(1)(B) and 8 C.F.R. § 1240.26(c)(1)(ii). As noted, these provisions require the IJ *to find* that the alien "is, and has been, a person of good moral character . . .." Therefore, the IJ had no reason to advise Defendant of eligibility for such relief nor did the Attorney General have a basis to provide Defendant such relief given the lack of a favorable finding. *See* 8 U.S.C. § 1229c(b)(1)(B) (providing for *the Attorney General* to allow voluntary departure in his or her discretion *if* "the [IJ] enters an order granting voluntary departure in lieu of removal).

///

///

///

---

[10] *See, e.g.*, *Navarro–Lopez v. Gonzales,* 503 F.3d 1063, 1068, 1073 (9th Cir.2007) (defining the generic elements of a crime of moral turpitude as involving "conduct that is inherently base, vile, or depraved, and contrary to the private and social duties man owes to his fellow men or to society in general").

1    In sum, the Court finds that Defendant has failed to establish that the first and third
2    removals cannot be used as predicates for the instant indictment.

3        **B.    Defendant's Second Removal—Expedited Removal[11]**

4        Defendant also challenges the validity of his expedited removal resulting from a
5    border patrol agent serving him with a notice and order for his expedited removal after he
6    was found in the country near the southern border on April 23, 2014. (ECF No. 48 at 31;
7    ECF No. 48-3; ECF No. 48-6; ECF No. 42.) Defendant contends that this expedited
8    removal is invalid—and thus cannot serve as a predicate for the indictment—because he
9    was eligible to withdraw his application for admission and the immigration officer failed to
10   exercise his discretion whether to grant Defendant such relief. (ECF No. 48 at 31–34.)
11   Defendant additionally argues that these actions and other procedural failures by the
12   immigration officer[12] violated his due process rights to notice and opportunity to respond
13   in various ways, particularly because of the absence of judicial review. (*Id.* at 31, 36–38.)
14   In gist, Defendant argues that but for the immigration officer's procedural errors in violation
15   of his due process rights, he would have requested withdrawal relief and it is plausible that
16   the immigration officer would have granted him such relief and therefore he was prejudiced
17   by the procedural errors. (*Id.*; *see also* ECF No. 36 at 2.)

18       The government again refers to its Incorporated Response where it argued that
19   Defendant was not eligible for withdrawal because he was already in the country and the
20   Court lacked jurisdiction to entertain a claim attacking the validity of the removal order.
21   (ECF No. 28 at 11.) The record reflects that the government withdrew the latter argument.
22   (ECF No. 33 (conceding that *Barajas-Alvarado* provides otherwise).) The Court will thus
23   address the eligibility argument and Defendant's other due process arguments in turn. In
24   doing so, the Court additionally considers the government's response to the motion for
25   leave to supplement and accompanying exhibits (ECF Nos. 41, 41-1, 41-2, 41-3, 41-4).
26   ///

27       [11]Expedited removals may serve as a predicate for prosecution under 8 U.S.C. §
     1326. *Barajas-Alvarado*, 655 F.3d at 1086–87.

28       [12]The relevant immigration officer is also the noted border patrol agent.

16

### 1.    Eligibility for Withdrawal

As the Court found regarding Defendant's first motion to dismiss, Defendant was eligible to withdraw his application for admission.

Withdrawal is a discretionary form of relief. *Raya-Vaca*, 771 F.3d at 1206. "An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States." 8 U.S.C. § 1225(a)(4). Where an individual is granted leave to withdraw his application for admission he "may exit the United States voluntarily and without a removal ordered." *Raya-Vaca*, 771 F.3d at 1206 (citing 8 CFR § 1235.4); *see also* 8 C.F.R. § 1235.4 (providing that the Attorney General may exercise discretion to permit "any alien applicant for admission to withdraw his or her application for admission in lieu of removal proceedings . . . or expedited removal.").

Under § 1225(a)(1), an alien is deemed an applicant for admission for immigration purposes if he is:

> An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) . . ..

8 U.S.C. § 1225(a)(1). It is uncontestable that Defendant was in the country—having been found within and near the border—at the time of the expedited removal. (*See, e.g.*, ECF No. 42.) Defendant was thus an applicant for removal and therefore eligible to seek withdrawal even though he did not formally apply for admission. *See Raya-Vaca*, 771 F.3d at 1206 ("Even though [defendant] did not formally apply for admission to the United States, he is considered to have been an applicant for admission and as such was eligible for 'withdrawal of application for admission.'"). Accordingly, as an initial matter the Court agrees with Defendant that he was eligible for withdrawal.

A key inquiry, however, is whether a *border patrol agent* is required to exercise discretion in deciding whether to permit a defendant who is eligible for withdrawal to withdraw his application for withdrawal, as Defendant argues here. (ECF No. 48 at 32–

36.) Defendant particularly contends that the border patrol agent's failure to exercise discretion as to whether to permit Defendant to withdraw renders the second removal invalid. (*Id.*)

In ruling on Defendant's first motion to dismiss, this Court concluded that Ninth Circuit caselaw does not support that an immigration officer—as opposed to an immigration judge—had a duty to advise an alien of his eligibility to withdraw his application for admissions. (ECF No. 35 at 7–8 (relying on *United States v. Lopez-Velasquez*, 629 F.3d 894, 897 (9th Cir. 2010)).) In the Motion, Defendant does not directly challenge that conclusion. (*See* ECF No. 48 at 32.) Instead, Defendant argues "[e]ven if arguably there is no affirmative duty of an immigration officer to advise . . . the immigration officer must engage . . . discretion in choosing to deny an arriving alien that form of discretionary relief." (*Id.*) Defendant's argument is not persuasive where discretion is based on the duty to exercise such discretion. Ordinarily, where there is no obligation to do something, logically there is no requirement that that thing must be done. Nonetheless, for the sake of argument, the Court will assume that the immigration officer had a duty to exercise his discretion as to whether to grant Defendant withdrawal but failed to exercise such discretion. (*But see* ECF No. 41-2 ("Record of Sworn Statement in Proceedings . . ." providing: "I want to take your sworn statement regarding your application for admission to the United States . . .").) The inquiry then becomes whether Defendant was prejudiced by the failure to exercise discretion, discussed *infra*. The Court undertakes this analysis after first addressing Defendant's other arguments of alleged due process violations.

## 2.    Defendant's alleged Due Process Violations

Defendant alleges three procedural errors which he claims amounts to violations of his fundamental due process rights to notice and the opportunity to be heard. (ECF No. 48 at 36–39.) Relying on his own declaration, Defendant argues that: (1) there was a procedural violation because he was never advised of the charge of admissibility against him; (2) he was never served with and never acknowledged receipt of the Notice and Order of Expedited Removal ("Notice and Order") and (3) he never reviewed or had read

18

or explained to him the Record of Sworn Statement ("Sworn Statement") prepared in his name. (*Id.*; ECF No. 36.) As a general response, the government argues that Defendant fails to meet his burden to collaterally attack his expedited removal because even if he demonstrates procedural flaws he must also show he suffered prejudice as a result. (ECF No. 33 at 2.) The government also provides the declaration of Border Patrol Agent Jason Pangan—who took Defendant's Sworn Statement—as a direct challenged to Defendant's three claimed procedural violations. (ECF Nos. 41, 41-1.)

Pangan's declaration provides that he is confident he read Defendant his Sworn Statement back to him—as reflected by Defendant's initials on each page of the Sworn Statement—without coercion, per policy and his practice. (*Id.* at 2–3; *see also* ECF No. 42 (government's errata providing all pages of the sworn statement proceedings).) Pagan further attests that at no point did he believe that Defendant "did not understand the expedited removal." (*Id.* at 3.) He expresses this belief especially relating to the Notice and Order. (ECF Nos. 41-3, 41-4.) Pagan provides that had Defendant "not understood it, after hearing me recite the introductory paragraphs of [the Sworn Statement, he] would not have confirmed that he understood what I had told him about his apparent status and opportunity to present information." (*Id.*) The Sworn Statement's introductory paragraph particularly provides notice of the charge of inadmissibility: "You do not appear to be admissible or have the required legal papers authorizing your admission to the United States." (ECF No. 41-2 at 2.)[13] Pagan further states he read Defendant's statement back to him in Spanish and therefore he does not believe there was a language barrier. Considering the dueling declarations by Defendant and Pagan and Pagan's reliance on his general conduct based on policy and his practice, the Court concludes that Defendant fails to demonstrate that Pagan committed procedural error based on Defendant's

///

///

---

[13]The Notice and Order also provides the determination of inadmissibility based on 8 U.S.C. § 1182(a)(7)(A)(i)(1).

1  arguments except as to service and acknowledgment of the Notice and Order. The Court

2  separately discusses the latter.

3       While the Notice and Order directly contradicts Defendant's statement that he was

4  never served with that notice,[14] Defendant bases his violation of due process argument

5  on the contention that Pagan failed to comport with 8 C.F.R. § 1235.3(b)(2)(i). Section

6  1235.3(b)(2)(i) instructs that the immigration officer is to serve the notice and order "and

7  the alien shall sign the reverse of the form acknowledging receipt." 8 C.F.R. §

8  1235.3(b)(2)(i). Defendant argues that the absence of his signature on the Notice and

9  Order (*see* ECF No. 41-4) means that he was not served in violation of his fundamental

10 due process rights. (ECF No. 48 at 37–38.) Pagan's declaration provides nothing to

11 explain the absence of Defendant's signature on the Notice and Order. (*See generally*

12 ECF No. 41-1.) However, this Court is not persuaded that the lack of the signature—an

13 apparent procedural error—rises to the level of a fundamental due process violation as

14 Defendant argues (*see* ECF No. 48 at 37–38). *See, e.g., Barajas-Alvarado*, 655 F.3d at

15 1087-88 (failing to address this same lack of signature argue while addressing the alien's

16 other claims of procedural error); *Raya-Vaca*, 771 F.3d at 1205 (citations omitted) ("[T]here

17 are for present purposes, two types of regulations: (1) those that protect fundamental due

18 process rights, and (2) [. . .] those that do not. The second type of regulation only implicates

19 due process concerns when the failure to comply with the regulation causes prejudice.").

20 However, the Court acknowledges that to the extent the absence of Defendant's signature

21 on the Notice and Order suggests that he was in fact denied notice and an opportunity to

22 respond, under *Raya-Vaca* he suffered a due process violation. *Id.*

23 ///

24 ///

25 ///

---

26
27  [14]*See, e.g.*, ECF No. 41-4 at 2 (Pagan's signed Certificate of Service, dated "04-23-2014" and providing "I personally served the original of this notice upon the aboved-named person[—i.e., Defendant—] on 04-23-2014.").)

28

### 3. Prejudice/Plausibility of Relief

In any event, assuming Defendant was deprived of certain due process rights[15] and that he would have requested withdrawal relief, the Court finds Defendant fails to show plausibility—that he could (or would) have received this relief. Said differently, Defendant fails to establish that he was prejudiced by the violations he alleges. *See, e.g.*, *Barajas-Alvarado*, 655 F.3d at 1079 (requiring not only the demonstration of procedural flaw, but also a showing of prejudice).

"Although an arriving alien may ask to withdraw an application for admission, the grant of such relief is discretionary." *Id.* at 1089 (citation omitted); *see also* 8 U.S.C. § 1225(a)(4) ("An alien applying for admission may, in the discretion of the Attorney General and at any time, be permitted to withdraw the application for admission and depart immediately from the United States.").

The framework for assessing plausibility of obtaining withdrawal relief in the context of an expedited removal requires consideration of the Immigration and Naturalization Service's Inspector's Field Manual ("INS Manual") "which discusses when an official should permit an alien to withdraw his application for admission." *Raya-Vaca*, 771 F.3d at 1201; *see also id.* at 1207 (listing factors). According to the INS Manual, the following six factors are to be considered in determining whether to grant withdrawal of application for admission:

> the seriousness of the immigration violation; (2) previous findings of inadmissibility against the alien; (3) intent on the part of the alien to violate the law; (4) ability to easily overcome the ground of inadmissibility; (5) age or poor health of the alien; and (6) other humanitarian or public interest considerations.

*Id.* at 1207 (quoting *Barajas-Alvarado*, 655 F.3d at 1090). However, the list of factors is "non-exhaustive." *Id.* The Manual calls for a "fact specific analysis" and a "highly individualized determination and instructs officers to 'consider all facts and circumstances

///

---

[15] *See, e.g.*, *United States v. Peralta-Sanchez*, 847 F.3d 1124, 1131–32 (9th Cir. 2017), *on reh'g* (explaining procedural rights to which an alien who has entered the United States is entitled).

related to the case to determine whether permitting withdrawal would be in the best interest of justice'." *Id.* (internal quotations and citations omitted).

Defendant claims withdrawal relief was plausible because: (1) he committed no fraud—by, for example, deliberately presenting fraudulent documents like the defendant in *Barajas-Alvarado*[16]; (2) he was only subject to one prior removal that was void—albeit the Court has already concluded such removal was valid—and therefore the violation securing the second removal was not a serious immigration violation; and (3) humanitarian considerations weigh in his favor because he only sought to reenter the country to reunite with his family and to return to Reno, Nevada where "he had lived the balance of his life." (ECF No. 48 at 35–36.) Defendant also appears to contend that the Court should consider the general statistics he cites as to the percentage of other aliens who were afforded expedited relief, focusing alone on 2008 (*id.* at 35 n.17). *But see Barajas-Alvarado*, 655 F.3d at 1091 (observing that "a general statistic that 'discretionary relief applications are granted fifty percent of the time' was insufficient to show plausibility of relief").[17] Considering the six factors and other unenumerated concerns as to whether withdrawal would be in the best interest of justice in this case, the Court finds that Defendant's claim that relief was plausible is unsupported.

Aside from the fact that Defendant presents a "compelling humanitarian interest" in being united with his family in a place he has lived most of his life, *Raya-Vaca*, 771 F.3d at 1208, no other factor clearly weighs in his favor. First, while Defendant possessed no fraudulent documents that would serve to militate against permitting withdrawal, that fact merely renders that consideration which is of "singular importance . . . absent here." *See id.* (citing *Barajas-Alvarado*, 655 F.3d at 1090). Second, while Defendant's immigration

///

---

[16]In *Barajas-Alvarado*, the court found relief implausible primarily because the defendant there had deliberately presented false documents to gain admissions into the country. *Id.* at 1090–91.

[17]Unlike in *Raya-Vaca*, the Court concludes that Defendant's data in conjunction with the other plausibility considerations, discussed *infra*, does not support a conclusion that Defendant has presented individualized evidence supporting the plausibility of relief. *Cf. id.* at 1209.

violation does not rise to the level of a serious immigration violation—having only previously entered the country on one other documented occasion, Defendant also "intended to violate the law," as evidenced by the fact that he was previously removed by order of the immigration court and had again been found illegally within the country (ECF No. 28-4). *See id.* (making similar considerations but concluding that was not dispositive). Third, *Raya-Vaca* suggests that a prior removal, as Defendant had here, "constitutes a prior finding of inadmissibility." *Id.* Four, Defendant fails to even argue, much less point to evidence in the record, that he has the ability to "easily" overcome the ground of admissibility here—for not possessing documents to permit legal entry under the Immigration and Nationality Act sections 212 and 235 (ECF No. 48-3). *See* 8 U.S.C. § 1182(a)(7)(A)(i)(1) (expressly providing that an alien "is inadmissible" where at the time of his application for admission he "is not possession of a valid unexpired immigration visa, reentry permit, border crossing identification card, or other valid entry document required" and valid or suitable traveling document, or "document of identity and nationality[,]" if required). Additionally, the Ninth Circuit has concluded that neither good health nor age supports a defendant's assertion that relief was plausible. *Raya-Vaca*, 771 F.3d at 1208.

Moreover, the Court considers the unenumerated factor of Defendant's more recent felony criminal history and finds that history counsels against a finding of plausible relief. *See, e.g.*, *id.* at 1209 (considering the defendant's criminal history, but finding that the defendant's "misdemeanor criminal history was fairly minimal" and therefore had little bearing on the plausibility of relief); *U.S. v. Roque-Polanco*, No. 11cr5520-IEG, 2012 WL 1357679, at * 4 (S.D. Cal. Apr. 18, 2012) (considering the defendant's conviction which was both an aggravated felony and crime involving moral turpitude as rendering the defendant "inadmissible pursuant to 8 U.S.C. § 1182(a)(2)(A)(i)(1)" and concluding that as such the conviction was relevant to plausibility).

At the time of the expedited removal, Defendant had been adjudged guilty of, at least, felony possession of a controlled substance—methamphetamine (ECF No. 28-2; ECF No. 28-4 at 4; ECF No. 49), which he does not contest rendered him inadmissible

23

1   under 8 U.S.C. § 1182(a)(2)(A)(i)(2). Further, as discussed, the record at the time of the

2   expedited removal was that the IJ in Defendant's first removal proceeding found

3   Defendant had also been convicted of a felony crime involving moral turpitude, which also

4   rendered Defendant inadmissible under 8 U.S.C. § 1182(a)(2)(A)(i)(1). (*See also* ECF No.

5   28-4 at 4; ECF No. 28-8.) Moreover, 8 U.S.C. § 1182(a)(2)(B) provides that an alien

6   convicted of two or more offenses—like Defendant here—for "which the aggregate

7   sentences to confinement were 5 years or more is inadmissible." Relevantly, for the two

8   noted convictions, Defendant was subject to sentences which included maximum terms of

9   34 months and 30 months, which in aggregate exceeds five years. (ECF Nos. 28-2, 28-

10  8.)

11      In sum, considering factors relevant to Defendant's claim that the relief of being

12  granted withdrawal was plausible, the Court finds to the contrary. Accordingly, the Court

13  finds Defendant fails to establish that he was prejudiced by the expedited removal and

14  therefore this removal may serve as a predicate to the instant indictment.

15      Because Defendant fails to successfully collaterally attack his prior removals, the

16  Court denies his second motion to dismiss the indictment (ECF No. 48).

17  **V.    CONCLUSION**

18      The Court notes that the parties made several arguments and cited to several cases

19  not discussed above. The Court has reviewed these arguments and cases and determines

20  that they do not warrant discussion as they do not affect the outcome of the issues before

21  the Court.

22      It is therefore ordered that Defendant's second motion to dismiss (ECF No. 48) is

23  denied.

24      DATED THIS 1st day of May 2019.

25

26                                              MIRANDA M. DU
                                                UNITED STATES DISTRICT JUDGE
27

28

                                      24